WILLIAM A. CLARK TRUST, THE WOODLAWN CEMETERY, TRUSTEE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 101–66.   Filed February 5, 1968.

*James A. Glascock, Jr.,* for the petitioner.
*Paul H. Frankel* and *Robert S. Gorin,* for the respondent.

OPINION

The question presented in this case is whether the Clark Trust is a "trust which, under its governing instrument, is required to distribute all of its income currently" within the meaning of section 642(b) of the Internal Revenue Code of 1954.[2] Such a trust is commonly referred to as a "simple" trust. If the Clark Trust is not a simple trust, it is entitled to a personal exemption of $100 rather than the $300 claimed on its 1962 return.

The respondent argues that the trust agreement allows the Cemetery to accumulate trust income and that the applicable New York law also permits such accumulation. In addition, the respondent states that the Clark Trust earned $544 of income in 1962 and only expended $487.13; thus, the Cemetery in fact accumulated $56.87 of trust income in 1962.

On the other hand, the Cemetery argues that the trust agreement and the applicable New York law require the Clark Trust to distribute all of its income currently and that it did in fact distribute all of its income in 1962. The Cemetery argues that the transfer of Clark Trust income to the Restricted Funds account is the required distribution of income. In other words, the Cemetery maintains that its Restricted Funds account is held by it as operator of the Cemetery and not as trustee of the Clark Trust.

The parties agree that resolution of this case is dependent upon the interpretation and application of the following language in section 1.651(a)–2(a), Income Tax Regs:

(a) The determination of whether trust income is required to be distributed currently depends upon the terms of the trust instrument and the applicable local

law. For this purpose, if the trust instrument provides that the trustee in determining the distributable income shall first retain a reserve for depreciation or otherwise make due allowance for keeping the trust corpus intact by retaining a reasonable amount of the current income for that purpose, the retention of current income for that purpose will not disqualify the trust from being a "simple" trust. * * *

The Cemetery contends that since the trust instrument requires it "to apply" the trust income to the perpetual care of the lots, it is required to distribute all of the trust income currently. It relies upon three New York cases that interpret the word "apply," which appears in the Clark Trust agreement, to mean "pay over as income accrues." *Gasquet* v. *Pollock*, 1 App. Div. 512, 37 N.Y. Supp. 357 (Sup. Ct. 1896), affd. 158 N.Y. 734, 53 N.E. 1125 (1899) ; *In re Tefft's Will*, 130 N.Y.S. 2d 192 (Surr. Ct. 1954) ; *In re Geltman's Estate*, 194 Misc. 704, 86 N.Y.S. 2d 818 (Surr. Ct. 1949). However, these cases all involved a dispute over whether income was to be applied currently for the benefit of a life beneficiary or whether the income was to be accumulated for remaindermen. Thus, the dispute concerned not merely when was the income to be distributed, but more importantly, to whom was it to be distributed. In each case, the court concluded that since the trust instrument directed that the income was to be applied for the life beneficiary, the income was to be distributed to him. Thus, the decisions primarily determined who would receive the income and have no relevancy to a case involving a trust for perpetual care of cemetery lots in which there is no controversy over who will receive the income, but merely when will it be distributed.

We think the proper rule to be applied in this case is to determine the intention of the grantor, Clark, and construe the trust agreement in a manner that will carry out his intention. *In re Bishop's Trust*, 123 N.Y.S. 2d 887 (Sup. Ct. 1953) ; 4 Scott, Trusts 1160, 1370–1373 (2d ed. 1956). In the trust agreement, the Cemetery, as trustee, was directed to apply trust income "to the repair, preservation, or renewal of any tomb, monument, or other structure, and the planting and cultivating of trees, shrubs, flowers, or plants" in and around the Clark lots and "to apply the surplus of such income, if any, to the improvement and embellishment of said lots." This language clearly shows that Clark intended all of the income to be applied to the Clark lots, but it does not require that all the income be applied to the lots as it accrues. He must have recognized that the expenditures for perpetual care would not exactly coincide each year with the income of the trust. In some years, the expenses would be less than the income; in other years, they would exceed the income. The Cemetery as trustee was expected to use its sound discretion in the application of the trust income. If proper

care of the lots in a particular year should require only $490 of $500 trust income, surely it was not intended that the Cemetery find some way to spend the extra $10 in that year. It must have been contemplated that major repairs on the mausoleum would be needed occasionally, and that excess income would be accumulated to take care of such repairs. It is recognized by New York law that a trustee may anticipate such expenditures. *In re Bohmert's Will*, 102 N.Y.S. 2d 394 (Surr. Ct. 1950) ; *Ridge* v. *Felt*, 184 Misc. 11, 52 N.Y.S. 2d 826 (Sup. Ct. 1945). We therefore find that the Cemetery, as trustee, may accumulate reasonable amounts of trust income in order to carry out effectively the purposes of the trust.

The parties agree that if we should interpret the trust agreement as allowing the Cemetery some discretion in accumulating trust income, New York law does not prevent or preclude such accumulation. N.Y. Real Prop. Law sec. 61–a; N.Y. Pers. Prop. Law sec. 16–a (now N.Y. Est., Powers and Trusts Law sec. 8–1.7).

The Cemetery next maintains that should we decide that under the trust agreement and New York law it can accumulate income to the extent necessary to provide for major repairs of the mausoleum or lots, the second sentence of section 1.651(a)–2(a), Income Tax Regs., is applicable to it. We do not agree. The second sentence of the regulations provides that retention of income for a reasonable reserve to keep the trust corpus intact, such as a depreciation reserve, will not prevent a trust from being a simple trust. But in this case, the Cemetery's accumulations are not for the purpose of keeping the trust corpus intact; the accumulations are maintained to fulfill more efficiently the purpose of the trust.

The last argument made by the Cemetery is that it in fact distributed all the Clark Trust income in 1962. The Cemetery argues that it occupied two positions in regard to its perpetual care trusts: First, it acted as trustee of the trusts; second, it maintained and operated the cemetery. Therefore, the Cemetery contends that when it transferred the funds from a trust to the Restricted Funds account, there was a distribution by that trust to the operator of the cemetery.

We believe that a transfer of trust funds by a trustee from one pocket to another does not absolve the trustee of his fiduciary responsibilities. Certainly, Clark did not intend the Cemetery to control any portion of his moneys unencumbered by any fiduciary responsibilities. In addition, section 92 of the New York Membership Corporations Law provides that such perpetual care funds shall be trust funds. Therefore, the transfer of funds from the Trust to the Restricted Funds account is not a distribution of such funds.

Accordingly, we find that the Clark Trust is not required by its trust agreement and the applicable New York law to distribute all of its income currently. The Clark Trust is therefore not a simple trust and is entitled to only the $100 personal exemption allowed by section 642(b).

*Decision will be entered for the respondent.*