OPINION OF THE COURT
Joseph S. Mattina, S.
Donna Elgie Levin, surviving spouse of Peter L. Levin and a cofiduciary of his estate, has petitioned this court for a further extension of the time to exercise her right of election against her husband’s will. Pursuant to EPTL 5-1.1-A (d) (2), the court directed that notice be given to the other beneficiaries of the trusts under the decedent’s will, whose interests would be affected by an election. A guardian ad litem, appointed at the time of the prior application for extension, continues to represent the infant beneficiaries of the trusts.
The will of Peter L. Levin, who died on June 2, 1997, was admitted to probate by this court. Letters testamentary and letters of trusteeship were issued to the petitioner and to Judith E. L. Grundy on March 17, 1998. Under the decedent’s will, the petitioner is the income beneficiary of a marital trust and a member of a class of beneficiaries (which includes the decedent’s two children and his sisters) to whom income and principal of the credit shelter trust can be distributed in the trustees’ discretion. The children hold the remainder interests in both trusts.
The petitioner made an initial application for extension of her time to elect prior to the expiration of six months from the date of issuance of letters testamentary. That application was timely, pursuant to EPTL 5-1.1-A (d), was granted by this court, and the time to elect extended for a period of six months. Because, by a prior order, the original period for filing the election had been tolled during the court’s deliberations, the exten *870 sion granted by the January 8, 1999 decision and order began 10 days from the date of the decision or January 18, 1999 and expired July 18, 1999. Petitioner made application for the further extension well before the July 18 expiration date.
The petitioner alleges, as she did in her original application, that without knowing the amount of any recovery in a medical malpractice action arising from the decedent’s death, she cannot determine whether the two testamentary trusts will provide her with sufficient resources on which to live or whether she should elect to receive her one-third outright.
The guardian ad litem and the parent and natural guardian of the infants once again oppose the requested extension. They argue that the petitioner’s application is time barred under EPTL 5-1.1-A (d) (1). That section, they claim, requires that an election must be filed no later than two years after the date of the decedent’s death, which in this case would have been June 2, 1999. Moreover, the guardian points out that EPTL 5-1.1-A (d) (2) prevents a court from relieving a spouse’s default in filing within that period if more than 12 months have elapsed since the issuance of letters, which he notes is the case here. Both the parent and the guardian also complain that it may be a considerable time before the medical malpractice claim is resolved and that multiple extensions of the time to elect would be detrimental to the children’s interests. Any election, if and when finally filed, they argue, would result in additional estate tax, including penalties and interest, which must be borne by the credit shelter trust, of which the children are, pursuant to the stipulation settling the will contest, primary beneficiaries.
We see no reason to diverge from the conclusion in our earlier decision that the petitioner has shown reasonable cause for the extension of the time to elect. The value of what could be the estate’s major asset, that portion of the proceeds of the pending medical malpractice action allocated to pain and suffering, remains unknown at this time. At the time of application, it appeared highly unlikely that the matter could be resolved and the amount of the recovery known within the next few months. That has proved to be the case. The outcome of the malpractice action will most likely be determinative of the election question, since the knowledge, both of any additional sums to be added to the estate, which would pass into the marital trust for her benefit, and of monies allocated to the wrongful death component which would be distributed to her outright will enable the petitioner to decide whether or not she will seek her one-third share free of the trusts.
*871 As we noted in our prior decision, the determination as to whether the surviving spouse has complied with the requirement of reasonable cause rests in the sound discretion of the court (Matter of Levin, Sur Ct, Erie County, Jan. 8, 1999, Mattina, S., slip opn, at 3, citing Matter of Geltman, 194 Misc 704 [Sur Ct, Bronx County 1949]; Matter of Zweig, 145 Misc 839 [Sur Ct, Kings County 1932]). And, as we pointed out at that time, courts have quite readily found reasonable cause in situations in which uncertainty exists as to extent and value of the decedent’s assets (Matter of Levin, supra, slip opn, at 4, citing, inter alia, Matter of Pollack, NYLJ, Aug. 19, 1998, at 22, col 5 [Sur Ct, Bronx County]; Matter of Watson, NYLJ, Mar. 18, 1997, at 31, col 4 [Sur Ct, Westchester County]).
We believe, then, that the petitioner has shown good reason for a second extension of the time to elect. The question remains whether the statute permits extensions to be granted, even with reasonable cause, more than two years from date of death. EPTL 5-1.1-A (d) (1) sets forth procedures for the making and filing of the election. The portion relied on by the opponents of the extension request provides as follows: “An election under this section must be made within six months from the date of issuance of letters testamentary or of administration, as the case may be, but in no event later than two years after the date of decedent’s death.” (EPTL 5-1.1-A [d] [1].) Paragraph (2) specifically deals with the procedures for requesting an extension of the time within which to make and file the election: “The time to make such election may be extended before expiration by an order of the surrogate’s court from which such letters issued for a further period not exceeding six months upon any one application.” It also allows a court to relieve a spouse’s default in timely filing and to authorize the making of an election provided that no decree has been issued settling the fiduciary’s account and that 12 months have not elapsed since the issuance of letters.
Taken as a whole, these paragraphs provide not so much for rigidity as for flexibility in the application of the requirements, enabling the court to exercise its discretion to extend the time to file for reasonable periods or to relieve default for good cause. Courts have generally been liberal in exercising their discretion to preserve the property rights of the spouse (Matter of Mescall, 51 Misc 2d 751 [Sur Ct, Erie County 1966]).
Paragraph (2), by its own terms, permits multiple extensions of six months each to be sought and granted, as the Court of Appeals recognized: “[I]f the spouse has serious and reasonable *872 doubt as to the value of the assets she is to receive under the will and the value of the estate as a whole, and wishes to postpone her decision beyond the six months’ period, the law expressly provides that she may secure one or more extensions of time * * * and thus defer her final decision” (Matter of Allan, 5 NY2d 333, 341 [1959]).
Since the court’s granting of an initial extension obviously relieves the spouse of adherence to the six-month requirement, so, we believe, can the granting of multiple extensions extend the time of actual filing, in certain situations, beyond two years from date of death. Such an interpretation is implicit in the observation of the Court of Appeals in Matter of Allan, quoted supra, and in the explanation of a distinguished commentary on estates law: “The extension allowed on any one application may not exceed six months. However, multiple applications for an extension appear to be allowable under the wording of the statute; all that is required is that the original application occur not later than the time provided for in EPTL 5-l.l-A(d)(l), i.e., six months from the date of the issuance of letters, but in no event later than two years after decedent’s death, and that subsequent applications occur prior to expiration of the extended time period.” (5 Warren’s Heaton, Surrogates’ Courts 73.05 [2] [a] [6th ed rev 1998].)
To require in all cases that the election, after any extensions, be filed within two years of date of death would be to subject many spouses to undue hardship. This is particularly so in cases like the instant one, in which a cause of action arises from the circumstances of the decedent’s death. It is not uncommon for such actions to take two years or more from date of death to be resolved by settlement and often longer to be tried. Prior to resolution, sufficient information on the amount, or even likelihood, of recovery may not be available to the spouse.
A holding permitting extension of the time to elect beyond two years is not, we believe, contrary to a primary purpose of paragraphs (1) and (2), which is to set an outside limit on the time of initial exercise, or request for an extension of that exercise, of the spousal right. Without some limitation, beneficiaries receiving property both under and outside the decedent’s will would have no certainty of enjoyment of such benefits because of the possibility of an election years after death and, with it, of a contribution to the elective amount. The extension procedure, however, removes the element of surprise for the beneficiaries, since it authorizes the court to require that no *873 tice of application for the extension be given to those affected by the potential exercise. And, the statute further permits the court to set new outer limits on the extension when, after an evaluation of a particular set of circumstances, it grants or denies further extensions. In the case before us, the decedent’s children and siblings have been aware of the medical malpractice claim which provides the rationale for the extensions since its inception and have received notice and an opportunity to be heard as each of the extensions has been requested. This court is cognizant of the need of all the beneficiaries for finality. In authorizing a second extension, we are agreeing that the petitioner be given a reasonable, but not an unlimited, time to make her decision.
The interpretation that the respondents seek to have the court place on the statute would create a particular hardship for this petitioner. The decedent’s children, who would be affected by an election, have another parent to provide financial support and are the recipients of Social Security survivors’ benefits and the beneficiaries of trust funds created by their grandparents. In addition, pursuant to the stipulation settling the objections to probate, they are to be the primary beneficiaries of income and principal distributions from the credit shelter trust under the decedent’s will. The petitioner, in contrast, who was largely financially dependent on the decedent during his lifetime, must at present look primarily to the marital trust under his will for funds on which to live. Should the malpractice action not produce sufficient additional resources, she could be in the position of needing to elect to take a third of the estate outright. She seeks only to preserve that option.
The decedent’s children are not, in the opinion of this court, unduly prejudiced by any extension beyond the two-year mark. First, apart from the more than ample resources for present and future support already mentioned, they stand to receive a substantial portion of any malpractice recovery. Although we agree that a future election could result in the assessment of greater estate taxes, as well as penalties and interest, we also recognize that the estate and its beneficiaries will have the use of those funds, which have been invested for income and appreciation, until any such taxes are paid. Finally, as we concluded in our prior decision, and as the guardian ad litem and parent now concede, an election by the petitioner would in actuality benefit the children by accelerating their enjoyment of two thirds of the estate.
*874 Since the petitioner has requested extensions of her time to file the election in a timely manner, her failure to elect to date does not constitute a default, from which she requires relief from the court, as the guardian seeks to argue. Therefore, the provision in paragraph (2) limiting any relief from default to a period of one year from the issuance of letters has no relevance in the instant case. Nor, we conclude, does the requirement for an election within two years from date of death. Both of the petitioner’s applications for extension have been timely filed, the first before the expiration of six months from the date of letters testamentary, the second before the expiration of the initial extension and before the expiration of two years from the decedent’s death. We find that the petitioner has shown good cause for the present, as for the previous, extension. And we find nothing in statutory or decisional law to preclude multiple extensions from projecting the actual election, if in fact it is made, beyond two years from the date of the decedent’s death.
Wherefore, the petitioner’s application for an additional extension of time within which to file her election against the decedent’s will is hereby granted for a period of six months. Because the time has been tolled during the pendency of this proceeding, the six-month extension period shall begin on the date of this decision.